Filed 4/7/23 P. v. Burrus CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. CHRISTOPHER ALBERT BURRUS, Defendant and Appellant. | F084418 (Tulare Super. Ct. No. VCF290810B) **OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County. Antonio A. Reyes, Judge.

Spolin Law, Aaron Spolin, and Jeremy Cutcher for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Smith, Acting P. J., Meehan, J. and Snauffer, J.

## INTRODUCTION

In 2016, appellant and defendant Christopher Albert Burrus (appellant) pleaded no contest to attempted murder with gang and firearm enhancements and was sentenced to an indicated sentence of 22 years in prison.

In 2022, appellant filed a petition for resentencing pursuant to Penal Code section 1172.6[1] and asserted he was entitled to relief because he was convicted based on a theory of imputed malice. The trial court summarily denied the petition without appointing counsel.

On appeal, the parties agree the matter must be remanded because the trial court should have issued an order to show cause (OSC) and conducted an evidentiary hearing. Accordingly, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

"Reports of the Visalia Police Department indicate at approximately 6:53 p.m. on January 27, 2012, officers responded to the Visalia Mall regarding a report of shots fired. Officers arrived and found two victims lying on the floor of The Sweet Factory, a candy store inside the mall. M.A. had a large amount of blood pooling around him and suffered at least one gunshot wound to his neck. It was later determined he also sustained gunshot wounds to his right elbow and inside portion of his left thigh. The second victim, S.H.[,] suffered a gunshot wound to his right thigh. Both were transported to Kaweah Delta Medical Center for treatment.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated. Appellant filed his petition in 2022 under former section 1170.95, which was renumbered as section 1172.6 without substantive change on June 30, 2022. (*People v. Saibu* (2022) 81 Cal.App.5th 709, 714; Stats. 2022, ch. 58 (Assem. Bill. 200), § 10, eff. June 30, 2022.) As such, we refer to the subject statute by its current number throughout this opinion.

[2] The following factual statement is taken from the probation report, also cited in the parties' appellate briefs, for the limited purpose of giving context to the parties' appellate arguments. We do not on the hearsay summary to resolve the prima facie issue in this appeal. (§ 1172.6, subd. (d)(4); *People v. Owens* (2022) 78 Cal.App.5th 1015, 1026.)

2.

"Officers viewed mall surveillance and observed codefendants Anthony Hanson and Adrian Esquer standing in front of the candy store and monitoring the victims' movements prior to the shooting.

"Victim S.A., a store employee, advised she observed the shooter, who was later identified as Adrian Esquer and victim M.A. arguing in the store and told them both to stop. Mr. Esquer then brandished a handgun and began shooting. S.A. ducked behind a counter, heard more gunshots, and observed M.A. fall to the ground, bleeding heavily from his neck. S.A. used a towel to apply direct pressure to M.A.'s wound until paramedics arrived.

"Victim S.H. informed investigators he was only in the store a few minutes when he observed Mr. Esquer run up and start firing toward an employee, S.A., and M.A. S.H. indicated the shooter shot at M.A. several times, turned and shot him and then fled on foot. S.H. sustained a through-and-through gunshot wound to his right thigh.

"M.A. indicated he and his brothers, F.A. and J.A., and their friend, J.S., were in the Visalia Mall when some subjects began trying to start a fight with them. M.A. stated the subjects were showing Northern Hispanic criminal street gang colors and he believed they thought he was a rival gang member. He believed the shooter shot six times at him, his brothers and their friend. M.A. identified the shooter as Adrian Esquer, who was someone he and/or his brothers previously knew from school. Victims J.A. and F.A. also identified Anthony Hanson, who has known, Northern Hispanic criminal street gang ties, as the second person with Mr. Esquer during the shooting. Witnesses and victims identified Mr. Esquer as the lone shooter and Mr. Hanson was not seen in possession of a weapon. However, witnesses reported seeing Mr. Hanson approach the victims with Mr. Esquer, proudly displaying a red bandana. Mr. Hanson stood by and watched the entire incident unfold while apparently texting on his phone; continued to stand by while shots were being fired; and, did not flee the scene until Mr. Esquer fled. Gang slurs were also heard being shouted.

3.

"Following the shooting, witnesses reported seeing Mr. Hanson with Mr. Esquer as he hid a .22 caliber, semi-automatic handgun within some bushes at a nearby business. Officers subsequently responded to the location and recovered the firearm.

"On January 28, 2012, officers located and arrested Mr. Hanson. He did not make a formal statement to the authorities, but made a spontaneous statement at the time of his arrest, saying, 'I'm going away for a long time on this one.'

"On January 29, 2012, officers responded to Mr. Esquer residence and took him into custody. In a search of his residence, officers located gang indicia. During questioning, Mr. Esquer admitted that four or five Southern Hispanic criminal street gang members were 'talking shit' to him on the day of the crime. Mr. Esquer acknowledged associating with Northern gang members and said he knew one of the four or five subjects from school. He said his victims didn't possess any weapons and claimed his actions were not planned. Mr. Esquer admitted that he, not Mr. Hanson, was the shooter, but acknowledged Mr. Hanson was his accomplice and knew he had a gun. Mr. Esquer admitted hiding the gun after the shooting and said he felt badly for what he did at the mall. The crime report noted Mr. Esquer had six, visible, gang-related tattoos.

"Further observation of mall surveillance revealed known Northern gang members Nathan Hiser and Andy Nanez were also present at the mall prior to the shooting. On January 30, 2012, officers located and interviewed Nathan Hiser. During questioning, Mr. Hiser advised [appellant] Christopher Burrus … informed him he was at the mall with his family and had trouble with the victims prior to the shooting. [Appellant] further informed Mr. Hiser, he then contacted Mr. Nanez who ultimately contacted Mr. Esquer and Mr. Hanson for the job. Phone records later revealed communication between all the defendants prior to and following the shooting.

"On February 8, 2012, officers responded to [appellant's] residence and contacted him regarding the shooting. During questioning, [appellant] advised he was at the mall prior to the shooting and observed a group of individuals who may have been

4.

'Southerners,' and they were 'mugging' him. He further advised he was speaking with a security guard when he noticed the group minutes before the shooting. He denied any involvement, but admitted to associating with Northern gang members.

"Further observation of the mall surveillance revealed [appellant] in the mall's food court speaking with a security guard prior to the shooting. Police also observed Nathan Hiser shaking [appellant's] hand on two occasions. Investigators later contacted the security guard who confirmed he was speaking with [appellant] prior to the shooting.

"On November 5, 2013, a complaint was filed and a bench warrant was issued for [appellant] and Mr. Nanez.

"On December 12, 2013, [appellant] was located at the Motel 99 and taken into custody ….

"On February 7, 2014, the officers responded to Mr. Nanez'[s] residence with a warrant for his arrest. Officers arrived and detailed him without incident. During questioning, he admitted to being at the mall at the time of the shooting, but denied any involvement. He further denied communicating with [appellant], Mr. Hanson or Mr. Esquer prior to, or after the shooting. He was taken into custody …."

**The Charges**

On February 11, 2014, an amended felony complaint was filed in the Superior Court of Tulare County case No. VCF290810 A-B charging appellant Burrus and codefendant Nanez with eight felony counts and special allegations.

A preliminary hearing was conducted, and they were held to answer.

On January 23, 2015, the information was filed in case No. VCF290810 A-B, charging appellant and codefendant Nanez with eight felony counts and special allegations. On December 2, 2016, a first amended information was filed.

On December 5, 2016, a second amended information was filed that charged appellant and codefendant Andy Jacob Nanez with counts 1 through 6, premeditated attempted murder of, respectively, M.A., S.H., J.A., F.A., J.S., and S.A. (§§ 664,

5.

subd. (a), 187, subd. (a)); count 7, conspiracy to commit murder (§§ 182, subd. (a)(1), 187); count 8, criminal street gang conspiracy (§ 182.5); and count 9, conspiracy to commit assault with a firearm (§§ 182, subd. (a)(1), 245, subd. (a)(2)).

As to appellant, it was further alleged for all charges except count 8, that a principal personally and intentionally discharged a firearm, a handgun, causing great bodily injury or death (§ 12022.53, subd. (d)); and the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)).

It was also alleged that appellant had two prior strike convictions (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and two prior serious felony conviction enhancements (§ 667, subd. (a)(1)).

**The Plea Hearing**

On December 5, 2016, the day before their joint jury trial was scheduled to begin, appellant and codefendant Nanez entered into plea agreements, for each to receive an indicated sentence of 22 years in prison. The court stated both parties had been working "very hard" to resolve the case.

As to appellant, the court advised him of his constitutional rights, and the consequences of his plea. Appellant stated he understood and waived his rights. In response to the court's questions, appellant said he had enough time to talk to his attorney about his plea, and he was satisfied with his advice, and added: "Seems like it's the best I can get right now …." Both parties stipulated to the preliminary hearing transcript and the police reports as the factual basis for the pleas.[3]

Both appellant and codefendant Nanez pleaded no contest to count 1, attempted nonpremeditated murder of M.A. and S.H. (§§ 664, 187, subd. (a)), with gang enhancements (§ 186.22, subd. (b)(1)(B)) and an amended section 12022.53, subdivision (b) enhancement, that a principal intentionally discharged a firearm, and

---

[3] The preliminary hearing transcript is not part of the instant record.

counts 2 and 3, assault by means likely to produce great bodily injury on, respectively, J.A. and J.S., and F.A. and S.A. (§ 245, subd. (a)(4)) with gang enhancements.

Appellant admitted one prior strike conviction and one prior serious felony enhancement. Appellant also entered pleas and admissions in other cases. The court granted the prosecution's motion to dismiss the remaining charges and allegations.[4]

**Sentencing Hearing**

On January 17, 2017, the court held appellant's sentencing hearing. As to count 1, attempted murder, the court imposed the midterm of seven years, plus 10 years for the firearm enhancement and five years for the prior serious felony conviction enhancement, for a total of 22 years consistent with the indicated sentence. The court stayed the term for the gang enhancement, imposed concurrent sentences for counts 2 and 3 and stayed the attached enhancements, and dismissed the prior strike conviction.

The court also sentenced appellant on the pleas he entered in other cases, so that his aggregate sentence in all cases was 25 years four months in prison.

On February 26, 2019, an amended abstract of judgment was filed to correct the terms imposed in appellant's other cases, but the aggregate sentence in all cases was again 25 years four months in prison.

## APPELLANT'S PETITION FOR RESENTENCING

On March 22, 2022, appellant filed a petition for resentencing of his attempted murder conviction pursuant to section 1172.6 and requested appointment of counsel.

Appellant filed a supporting declaration that consisted of a preprinted form where he checked boxes that (1) he was eligible for resentencing because a complaint, information, or indictment was filed that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or

---

[4] While the second amended information was filed on the same day as the plea agreement, the pleas entered by appellant Burrus and codefendant Nanez were to charges that were again amended at the plea hearing.

other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) he was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial in which he could have been convicted of murder or manslaughter; and (3) he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

**The Court's Summary Denial of the Petition**

On or about March 28, 2022, Judge Reyes signed an order that summarily denied appellant's petition because appellant "was active shooter in incident." On April 4, 2022, the order was sent to appellant, stating that his "request has been DENIED, due to being the active shooter in the incident."

On May 25, 2022, appellant filed a notice of appeal.

## DISCUSSION

**I. Section 1172.6**

We begin with Senate Bill No. 1437's (2017–2018 Reg. Sess.) (Senate Bill 1437) amendments of sections 188 and 189, the enactment of section 1172.6, and subsequent statutory amendments.

"Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.] The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' [Citation.]" (*People v.*

8.

*Harden* (2022) 81 Cal.App.5th 45, 50–51; *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," codified in section 1172.6. (*Strong, supra*, 13 Cal.5th at p. 708.) The original version of the statute permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill No. 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

Effective January 1, 2022, Senate Bill No. 775 amended section 1172.6 and " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)

Section 1172.6, subdivision (a) thus states:

"(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine,* or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that

9.

person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a), italics added.)[5]

The court shall appoint counsel if requested by petitioner. (§ 1172.6, subd. (b)(3).) After service of the petition, the prosecutor shall file and serve a response. The petitioner may file and serve a reply after the response is served. (*Id.*, at subd. (c).)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

If an OSC is issued, "the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence…." (§ 1172.6, subd. (d)(1).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of

---

[5] While not applicable herein, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f).)

evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens…." (§ 1172.6, subd. (d)(3).)[6]

The prima facie determination is a question of law, and the trial court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law. (*People v. Lewis* (2021) 11 Cal.5th 952, 966 (*Lewis*).)

*Lewis* announced a prejudicial error standard under *People v. Watson* (1956) 46 Cal.2d 818, that if the court failed to appoint counsel or violated the petitioner's statutory rights under former section 1170.95, the petitioner must "therefore 'demonstrate there is a reasonable probability that in the absence of the error he [or she] … would have obtained a more favorable result.' " (*Lewis, supra*, 11 Cal.5th at p. 974.) To demonstrate prejudice from the denial of a former section 1170.95 petition before the issuance of an OSC, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis,* at pp. 972–974; see *People v. Watson, supra*, 46 Cal.2d at p. 836.)

---

[6] "If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing" in determining whether he made a prima facie case for relief. (*People v. Flores* (2022) 76 Cal.App.5th 974, 988.)

## II. The Court's Summary Denial

The court herein failed to comply with section 1172.6 when it denied appellant's petitions without granting his request for appointment of counsel, inviting further briefing, or conducting a hearing as to whether he stated a prima facie case for relief and an OSC should be issued.

The court's failure to comply with the statutory requirements of section 1172.6 is not prejudicial unless the petitioner shows it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974; see *People v. Watson, supra*, 46 Cal.2d at p. 836.) In determining whether a petitioner made a prima facie case for relief, the court may review the record of conviction. (*Lewis, supra,* 11 Cal.5th at pp. 971–972 & fn. 6.) The record of conviction allows the court "to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that … culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Id.* at p. 971.)

While the court gave reasons for denying appellant's petition, it violated section 1172.6 by making factual findings that appellant was purportedly the "active shooter" in the case. Effective on January 1, 2022, the substantive and procedural process for petitions in section 1172.6 clarifies that "the Evidence Code shall apply at such hearing. This may mean that, absent some exception, hearsay contained in probation, presentence reports, appellate opinions/orders, and other documents, are not now admissible" at an evidentiary hearing. (*People v. Owens*, *supra*, 78 Cal.App.5th at p. 1026.) The only factual statement in the record consists of the hearsay summary in the probation report. As noted by appellant, that summary identifies someone else and not appellant Burrus as the "actual shooter." Instead, the probation report states that

appellant's conduct leading to his convictions were "a representation of his leadership role within his gang."

Both appellant and the People agree that the court's summary denial of his petition prior to appointing counsel was prejudicial because the instant record does not contain any admissible nonhearsay evidence to find that appellant was ineligible for resentencing on his attempted murder conviction as a matter of law. While a preliminary hearing was held in this case, the transcript is not before this court. As conceded by the People, appellant's petition stated a prima facie case for relief, and the matter must be remanded for an OSC and an evidentiary hearing.

## DISPOSITION

The court's order that summarily denied appellant's petition for resentencing of his attempted murder conviction is reversed and the matter remanded for the trial court to appoint counsel, issue an order to show cause, and conduct an evidentiary hearing consistent with the provisions of section 1172.6.